1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9           **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11   KAWAN WILLIAMS, et al., | CASE NO. 11CV327 JLS (KSC) |
| 12                 Plaintiffs, | **ORDER GRANTING IN PART** |
| 13     vs. | **AND DENYING IN PART** **MOTION TO DISMISS** |
| 14   W J PRICE, et al., | (ECF No. 19) |
| 15                 Defendants. | |

16

17       Presently before the Court is Defendants L. McEwen, G. Janda, and D. Foston's Motion to

18 Dismiss Plaintiff's First Amended Complaint ("FAC"), (Mot. to Dismiss, ECF No. 19), which

Defendant W. J. Price joins, (Notice of Joinder, ECF No. 20).  Also before the Court are Plaintiff

19 Kawan Williams's ("Williams") Motion to Deny Defendants' Motion to Dismiss, which the Court

20 construes as a response in opposition, (Resp. in Opp'n. ECF No. 28), and Defendants' reply in

21 support, (Reply in Supp., ECF No. 29).  The Court has determined that Defendants' motion is

22 suitable for disposition on the papers without oral argument and that no Report and

23 Recommendation from Magistrate Judge Karen S. Crawford is necessary.  *See* CivLR 7.1.d.1,

24 72.3.e.  Having considered the parties' arguments and the law, the Court **GRANTS IN PART**

25 **AND DENIES IN PART** Defendants' motion.

26 //

27 //

28

**BACKGROUND**

Williams is a prisoner at Calipatria State Prison, where the events giving rise to this lawsuit took place in the Fall of 2009.  Williams alleges that prison officials cancelled the Friday Islamic "Jumu'a" services for six weeks, in violation of the Equal Protection Clause and his First Amendment right to practice his religion.  (FAC 3, ECF No. 5)  In response to a group inmate grievance, prison officials informed Williams and others that the reason the religious services were cancelled was to accommodate for court-ordered trainings that took place at that time.  According to Williams, the decision to "train during the only three hours afforded muslims [sic] inmates . . . for religious practice out of 168 hours available to them a week" for six weeks straight constituted a violation of his rights.  (*Id.*)

Following the denial of his inmate appeals, Williams filed a complaint in this Court on February 16, 2011, (Compl., ECF No. 1), and filed the operative FAC on July 7, 2011, (FAC, ECF No. 5).  Then, in January 2012, Defendants filed the instant motion to dismiss.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

//

1    "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

2  accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*,

3  550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts

4  pled "allow[] the court to draw the reasonable inference that the defendant is liable for the

5  misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must

6  be probable, but there must be "more than a sheer possibility that a defendant has acted

7  unlawfully."  *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible

8  entitlement to relief.  *Id.*  (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept

9  as true "legal conclusions" contained in the complaint.  *Id.*  This review requires context-specific

10  analysis involving the Court's "judicial experience and common sense." *Id.* at 679 (citation

11  omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere

12  possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is

13  entitled to relief.'"  *Id.*  Moreover, "for a complaint to be dismissed because the allegations give

14  rise to an affirmative defense[,] the defense clearly must appear on the face of the pleading."

15  *McCalden v. Ca. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990) (internal quotations omitted).

16    Relevant here, the Court has a duty to liberally construe a pro se's pleadings, *see Karim-*

17  *Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988), which is "particularly important in

18  civil rights cases," *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).  In giving liberal

19  interpretation to a pro se civil rights complaint, however, a court may not "supply essential

20  elements of the claim that was not initially pled."  *Ivey v. Bd. of Regents of the Univ. of Alaska*,

21  673 F.2d 266, 268 (9th Cir. 1982).

22    Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court

23  determines that the allegation of other facts consistent with the challenged pleading could not

24  possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir.

25  1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.

26  1986)).  In other words, where leave to amend would be futile, the Court may deny leave to

27  amend.  *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

28  //

**ANALYSIS**

Williams brings this 42 U.S.C. § 1983 action, asserting violations of (1) his Fourteenth Amendment Equal Protection Rights, and (2) his First Amendment Freedom of Religion.  (*See generally* FAC, ECF No. 5)  Defendants move to dismiss both claims, asserting that Williams has failed to state a claim as to his equal protection claim, and has failed to plead that any of the Defendants personally participated in any alleged constitutional violation, or, alternatively, that Defendants are entitled to qualified immunity.  (*See generally* Mot. to Dismiss, ECF No. 19)

**1.  Failure to Allege Sufficient Facts to Support Equal Protection Claim**

Defendants assert Williams "admits that the Jumu'a services were cancelled in order to complete court-ordered training," and therefore his equal protection claim must fail because Williams had not alleged that "Defendants had an intent or purpose to discriminate against inmates of the Islamic faith."  (Mot. to Dismiss, ECF No. 4)  The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  An equal protection claim may be established by showing that defendants intentionally discriminated against a plaintiff based on his membership in a protected class, *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702–03 (9th Cir. 2009); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 601–02 (2008); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

Here, Williams has alleged that he is a member of the Islamic faith, and that he and other members of the Islamic faith were denied the right to engage in religious services when prison officials scheduled court-ordered trainings at the same time as those scheduled services.  (FAC 3, ECF No. 5)  Williams has therefore sufficiently pleaded that he is a member of a protected class. *See Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001) (listing religion as a "suspect class"). The closer question, however, is whether he has pleaded sufficient facts to demonstrate that

1  Defendants "acted with an intent or purpose to discriminate against [him] based upon [his]

2  membership in a protected class."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

3       The Court disagrees with Defendants' assertion that Williams "admits" that Defendants did

4  not act with an intent or purpose to discriminate.  (Mot. to Dismiss, ECF No. 4)  In the FAC,

5  Williams reports the reason prison officials gave for the cancellation of the Jumu'a

6  services—namely, that court-ordered trainings took place during that time instead.  He goes on,

7  however, to note that he was dissatisfied not with the fact that the prison officials needed to hold

8  court-ordered trainings, but with the fact that they chose to do so at the only time available for the

9  prisoners' practice of their Islamic faith.  (FAC 3, ECF No. 5); (*see also* Resp. in Opp'n 1, ECF

10  No. 28 ("If [the court order] did not prescribe that the training only occur on fridays [sic] during

11  the specific time of the Jumu'a services, then one can reasonable [sic] conclude that these specific

12  times were chosen by the Defendants."))  A reasonable inference from these allegations may be

13  that the court-ordered trainings were intentionally or purposefully scheduled during the Friday

14  Islamic services rather than at some other time so as to discriminate against this religious group.

15  The Court therefore **DENIES** Defendants' motion to dismiss on this basis.

16  **2.  Failure to Allege Personal Participation**

17       Defendants also argue that Williams has failed to state a § 1983 claim because he "fails to

18  allege that any Defendant was responsible for cancellation of the Jumu'a services or the timing of

19  the court-ordered training."  (Mot. to Dismiss 5, ECF No. 19)  In order to state a § 1983 claim, a

20  plaintiff must allege direct personal participation by each state actor.  *Jones v. Williams*, 297 F.3d

21  930, 934 (9th Cir. 2002); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Williams names

22  four Defendants in this action: Price, Janda, McEwen, and Foston.  The Court considers whether

23  the allegations of personal participation are sufficient as to each Defendant in turn.

24       As to Defendants Price and Janda, Defendants assert that Williams alleges only that these

25  Defendants "responded to Plaintiff's grievance," but that there are no allegations in the FAC that

26  either of these Defendants played a role in scheduling the court-ordered trainings or cancelling the

27  Jumu'a services.  (Mot. to Dismiss 5, ECF No. 19)  In his opposition brief, Williams asserts that,

28  as prison warden, Janda "oversees all modifications in the institution's programs and operations,"

1   and that despite notice of Williams's rights violation via his inmate appeal, Janda offered no

2   explanation for why the court-ordered trainings could not have been scheduled at another time.

3   (Resp. in Opp'n 3, ECF No. 28)  Williams offers no opposition as to Defendant Price.[1]  (*See id.*)

4          In reply, Defendants point out that by the time Janda reviewed and responded to Williams's

5   inmate appeal the rights deprivation had already occurred and was no longer ongoing.  (Reply in

6   Supp. 3, ECF No. 29)  Specifically, Williams submitted inmate grievance number C0901892 on

7   October 18, 2009, indicating therein that "[f]or the last 6 weeks Islamic service has been cancel

8   [sic] because of [court-ordered] training," and requesting that the trainings be moved to a different

9   day so as not to interfere with the Jumu'a services.  (*Id.* Ex 1, at 7[2])  And, as pleaded in the FAC,

10  Janda's second-level review took place after the training was over, (FAC 2, ECF No. 5), on

11  November 1, 2009, (Reply in Supp. Ex. 1, at 7, ECF No. 29).  Thus, argue Defendants, Williams

12  cannot demonstrate that Janda played any role in the alleged rights deprivation because he "was

13  only advised of the deprivation after it had allegedly occurred."  (*Id.* at 3)  The Court finds this

14  argument compelling, and accordingly **GRANTS** Defendants' motion to dismiss on this basis.

15  However, the Court will grant Williams an opportunity to amend to allege facts that would support

16  an inference that Janda personally participated in the alleged rights deprivation, and therefore

17  **DISMISSES** Janda **WITHOUT PREJUDICE**.

18         As to Defendant McEwen, Defendants assert that Williams's allegations regarding

19  McEwen's personal participation in the rights deprivation are insufficient, despite his assertion

20

21         [1] Because Williams does not oppose as to Defendant Price, the Court does not consider
    whether Williams has sufficiently alleged Price's personal participation here, instead **GRANTING**
22  the motion as to Price pursuant to Local Rule 7.1.f.3.c. The Court does so **WITHOUT PREJUDICE**
    however, given the parties' apparent confusion as to whether Price had yet been served in this action,
23  (*see* Resp. in Opp'n 1, ECF No. 28; Mot. to Dismiss, ECF No. 19 (referring to Price as "unserved
    Defendant Price" throughout)), and because the Court does not find that amendment would be futile.
24

25         [2] Generally, on a motion to dismiss, a court may consider only three things: (1) "allegations
    contained in the pleadings," (2) "exhibits attached to the complaint," and (3) "matters properly subject
26  to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  However, a court may
    also "consider a writing referenced in a complaint but not explicitly incorporated therein if the
27  complaint relies on the document and its authenticity is unquestioned." *Id.* (citation omitted).  Here,
    Williams references his inmate grievance in the FAC, and its authenticity is not in dispute.  Thus, the
28  Court considers the inmate appeal form attached as an exhibit to Defendant's reply brief in ruling on
    the instant motion to dismiss.  Pin cites to the exhibit utilize the page numbers assigned by CM/ECF.

1   that McEwen "had the authority and responsibility to make sure all rules and regulations were not

2   violated by his staff." (Mot. to Dismiss 5, ECF No. 19 (citing FAC 2–4, ECF No. 5))  Williams

3   states in opposition that "it can be presumed that the institution head, McEwen, reasonably should

4   have had, and did have, personal knowledge of the timing of the training and the program

5   activities that would need to be interrupted for its execution i.e. Jumu'a services." (Resp. in Opp'n

6   2, ECF No. 28)  This is because, according to Williams, the court order directing the prison to

7   conduct trainings would have been directed to McEwen who "assumes responsibility for its

8   execution." (*Id.*)  However, as Defendants point out, none of these allegations as to McEwen's

9   responsibilities and knowledge actually appear in Williams's FAC, and the bare allegations

10  contained therein are not sufficient to support such an inference.

11         Factual allegations raised for the first time in an opposition brief cannot cure the

12  deficiencies of a complaint. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir.

13  1998).  Thus, the Court **GRANTS** Defendants' motion to dismiss the FAC as against Defendant

14  McEwen, because Williams has failed to allege sufficient facts to support McEwen's personal

15  participation in the alleged rights deprivation.  Nevertheless, the Court can and will consider

16  allegations raised for the first time in Williams's opposition brief in considering whether to grant

17  leave to amend, and accordingly **DISMISSES WITHOUT PREJUDICE** the FAC as against

18  McEwen. *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (citing *Orion Tire Corp. v.

19  Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137–38 (9th Cir. 2001)).

20         Finally, turning to Defendant Foston, Defendants assert that Williams has alleged only that

21  Foston denied his inmate grievance, which is insufficient to allege personal participation because

22  "[a] prison official's involvement and actions in reviewing or investigating a prisoner's

23  administrative grievance cannot serve as the basis for liability under a § 1983 action." (Mot. to

24  Dismiss 5, ECF No. 19)  Williams acknowledges that his allegations against Foston are

25  "apparent[ly] vague[]," but he clarifies in his opposition brief that Foston was personally involved

26  in the cancellation of the Jumu'a services by virtue of his knowing acquiescence of the

27  cancellation of the Jumu'a services. (Resp. in Opp'n 2, ECF No. 28)  As above, however, these

28  allegations are contained only in the opposition brief and not the FAC, and therefore the Court

1    **GRANTS** Defendants' motion and **DISMISSES WITHOUT PREJUDICE** the FAC as to

2    Defendant Foston.

3    **3. Qualified Immunity**

4           In the alternative, Defendants argue that they are entitled to qualified immunity because "a

5    reasonable officer could have believed that the constitution was not violated by holding court-

6    ordered training during the same day and time for six weeks—even though this would necessitate

7    the cancellation of one religious group's services for this period of time." (Mot. to Dismiss 8, ECF

8    No. 199)  According to Defendants, "[c]ase law supports short-term cancellation of religious

9    services for a legitimate penological interests [sic]," and thus reasonable officers in Defendants'

10   positions "'could have believed [their] actions lawful at the time they were undertaken.'" (Mot. to

11   Dismiss 9, ECF No. 19 (quoting *Friedman v. Boucher*, 580 F.3d 847, 858 (9th Cir. 2009))

12          Whether a party should be afforded qualified immunity is a question of law. *Johnson v.*

13   *Cnty. of L.A.*, 340 F.3d 787, 791 (9th Cir. 2003); *Nunez v. Davis*, 169 F.3d 1222, 1229 (9th Cir.

14   2000).  "[T]he basic purpose of qualified immunity is . . . to spare individual officers the burdens

15   and uncertainties of standing trial in those instances where their conduct would strike an objective

16   observer as falling within the range of reasonable judgment." *Gooden v. Howard Cnty.*, 954 F.2d

17   960, 965 (4th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  "The doctrine

18   of qualified immunity protects government officials 'from liability for civil damages insofar as

19   their conduct does not violate clearly established statutory or constitutional rights of which a

20   reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting

21   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

22          The test for determining whether a defendant enjoys qualified immunity has two prongs:

23   (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the

24   officer's conduct violated a constitutional right, and (2) was that constitutional right clearly

25   established in the context faced by the defendant? *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If

26   the plaintiff fails to establish these two prongs, the official is entitled to qualified immunity. *See*

27   *Pearson*, 555 U.S. at 235 (courts can evaluate either of the two prongs first).

28   //

1  Although the Court recognizes that the issue of qualified immunity is ideally decided early

2  on in the litigation, *see Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[B]ecause the entitlement is

3  an *immunity from suit* rather than a mere defense to liability, . . . we repeatedly have stressed the

4  importance of resolving immunity questions at the earliest possible stage in litigation." (internal

5  quotation marks omitted) (citation omitted)), the Court is hesitant to rule on this issue at this early

6  stage.  It may be true that temporary cancellations of religious services do not constitute

7  constitutional violations, but less clear is whether this rule applies to the factual circumstances

8  present here—namely, six straight weeks of cancellations of a particular groups' religious

9  services.  This is especially so in light of the myriad facts yet to be resolved, such as whether the

10  court ordered the trainings to take place on specific days and at certain times, and whether the

11  prison could have structured the training schedule so as not to deny just one group its religious

12  services.  Accordingly, the Court **DENIES** Defendants' motion on the basis of qualified immunity

13  **WITHOUT PREJUDICE** to Defendants raising this issue again at a later point in the litigation.

14  **4.  Dismissal of Request Injunctive Relief**

15  Defendants also ask the Court to dismiss Williams's "speculative request for injunctive

16  relief."  (Mot. to Dismiss 10, ECF No. 19)  Williams indicates that he has "[n]o argument against

17  defense's request for dismissal of request for injunctive relief," (Resp. in Opp'n 6, ECF No. 28),

18  and so the Court **GRANTS** Defendants' motion on this basis and **DISMISSES** the claim for

19  injunctive relief **WITH PREJUDICE**.  Having dismissed the request for injunctive relief, the

20  Court likewise **GRANTS** Defendants' motion to dismiss Defendants to the extent they are sued in

21  their official capacities.[3]

22  **CONCLUSION**

23  For the reasons stated above, the Court **GRANTS** Defendants' motion to dismiss for

24  failure to allege personal participation by each of the named Defendants.  Williams's FAC is

25  therefore **DISMISSED WITHOUT PREJUDICE**.  If Williams wishes, he **SHALL FILE** a

26  _____

27  [3] The Court notes that Williams has checked only the "official capacity" box for each of the
Defendants in his § 1983 form complaint.  (*See* FAC, ECF No. 5)  However, reading the complaint

28  as a whole and construing it liberally, the Court infers that Williams intended to sue Defendants in
their individual capacities as well, at least to the extent he seeks monetary damages against them, as
Defendants apparently recognize, (*see* Mot. to Dismiss 10, ECF No. 19).

1 second amended complaint within <u>twenty-one days</u> of the date this Order is electronically

2 docketed.  Failure to file an amended complaint by this date may result in dismissal of this case

3 with prejudice.

4          Additionally, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES WITH**

5 **PREJUDICE** Williams's claim for injunctive relief and his claims against Defendants in their

6 official capacities.  The Court **DENIES** Defendants' motion to dismiss on the basis of qualified

7 immunity **WITHOUT PREJUDICE**.

8          **IT IS SO ORDERED**.

9

10 DATED:  August 30, 2012

11 *Janis L. Sammartino*
   Honorable Janis L. Sammartino

12 United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28